**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT PIKEVILLE**

**CIVIL ACTION NO. 04-388-DLB**

**JERRY WRIGHT**                                                                                                 **PLAINTIFF**


vs.                                         **MEMORANDUM OPINION & ORDER**


**JO ANNE B. BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                                           **DEFENDANT**

******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Jerry Wright filed an application for a period of disability and disability insurance benefits (DIB) on January 31, 2002.[1]  His application was denied initially and on reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on August 19, 2003.  The ALJ issued an unfavorable decision on September 23, 2003, finding that Plaintiff was not under a disability.  The Appeals Council declined review by letter dated September 20, 2004.  The ALJ's decision, therefore, stands as the final decision of the Commissioner.

---

[1] The Court notes that the ALJ's written decision erroneously states that Plaintiff filed his application on December 31, 2005.  (Tr. 13).

1

Plaintiff, who was 46 years old at the time of the hearing, completed a ninth grade education and alleges an inability to work beginning on August 23, 2000 due to two ruptured discs; constant/chronic back pain; numbness in his legs, left arm, left side of his body, and hand; pain and stiffness in his neck; and arthritis in his back.  At the hearing before the ALJ, Plaintiff also indicated that: he has a valid driver's license, but cannot drive long distances; his lower back "hurts all the time," he has pain in his neck and shoulders, his arms and hands go numb, and his legs hurt all the way down to his feet; he is in pain 90% of the time and, on a scale of 1 to 10, he characterizes his pain as a "9;" he takes muscle relaxers, and has tried physical therapy and epidural injections in the past; he is able to walk 20-30 feet, stand 10-15 minutes at one time, lift 5-8 pounds, and sit 20-30 minutes without changing positions; he cannot bend or stoop, and experiences numbness in both hands; he smokes 2-3 packs of cigarettes per day; he has vision and hearing problems, as well as difficulty sleeping; he lays down 3-4 times per day, for 30-40 minutes at a time; and he prefers to be by himself, rather than in the presence of crowds.

Having exhausted his administrative remedies, Plaintiff filed the instant action on November 8, 2004.  The matter has culminated in cross motions for summary judgment (Docs. #4, 5), which are now ripe for review.

## II.  DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

"Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

B.   The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 14). At Steps 2 and 3, the ALJ found that Plaintiff's lumbar spine constitutes a severe impairment, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 14-15). At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform light exertional work.

(Tr. 17). Specifically, the ALJ found that Plaintiff can lift 20 pounds occasionally, 10 pounds frequently; stand/walk/sit for 6 hours; occasionally climb stairs and ramps; never climb ladders/ropes/scaffolds; occasionally stoop, kneel, crouch, or crawl; and must avoid repetitive bending, turning, and twisting, as well as full body vibration. (Tr. 17).

Based on that assessment,ced the ALJ concluded that Plaintiff is unable to perform his past relevant work.[2]  At Step 5, however, the ALJ found that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national and regional economies. (Tr. 19). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.   Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ should have recontacted physical therapist, Judy Stephens, to determine whether additional information was readily available. According to Plaintiff, even though the ALJ concluded that the functional assessment prepared by Stephens was "not consistent with the credible medical evidence of record," he should have followed the recontact requirement of 20 C.F.R. § 404.1512(e)(1) rather than rejecting the opinion outright. Plaintiff notes that this recontact regulation is mandatory in nature and applies to treating physicians, as well as other medical sources, such as Stephens.[3]  In response, the Commissioner argues that

---

[2] Plaintiff previously worked as a roof bolter in the coal mines, truck driver, heavy equipment operator, pipeline laborer, and welder. (Tr. 18).

[3] Plaintiff mistakenly states that Stephens is a nurse practitioner in his motion for summary judgment.

4

Stephens' assessment was entitled to "little deference," as it was inconsistent with both the treating physician's (Dr. Scott) and the consultative examiner's (Dr. Burns) opinions. In addition, the Commissioner alleges that the record was adequate to make a disability determination and, absent any apparent conflict or ambiguity in her report, the ALJ was not required to recontact Ms. Stephens.

Both parties agree that 20 C.F.R. § 404.1512(e)(1) requires an ALJ to recontact a medical source in three situations: 1) when the report from the medical source contains a conflict or ambiguity that must be resolved; 2) when the report does not contain all the necessary information; or 3) when the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. Plaintiff does not allege which of the foregoing situations is implicated in this case, nor does he identify what "additional information" the ALJ should have elicited from Ms. Stephens.

Plaintiff alleges that his back disorder, and the physical problems related thereto, preclude him from working. (Tr. 48). The medical evidence indicates that Plaintiff sustained a work-related injury to his back in August 2000. After an MRI revealed disc herniation at the L5-S1 level, he was referred to neurosurgeon, Dr. Brett Scott. Dr. Scott performed surgery on July 6, 2001.[4] Plaintiff followed up with Dr. Scott for approximately five months post-surgery, after which he was referred to Dr. Sai Gutti for pain management.

---

[4] Dr. Scott performed the following procedures: 1) right L5 and S1 partial hemilaminectomies, 2) L5-S1 medial facetectomy, and 3) L5-S1 discectomy.

On March 19, 2002, Dr. Gutti recommended a functional capacity evaluation.[5] (Tr. 187). That assessment, which is the subject of Plaintiff's appeal, was performed by physical therapist, Judy Stephens, on April 11, 2002. Based on her evaluation, Stephens opined that Plaintiff can sit for up to 4 hours with frequent breaks, stand for up to 4 hours with frequent breaks, and walk for up to 2 hours with frequent breaks. (Tr. 333). She also opined that Plaintiff can never bend/stoop or crouch; can occasionally squat, crawl, climb stairs, and kneel; can frequently balance; and can occasionally carry 22 pounds. (*Id*.). According to Dr. Gutti, Plaintiff is capable of performing light level work for four hours per day. (Tr. 356).

As discussed by the ALJ in his written decision, Ms. Stephens' functional evaluation was inconsistent not only with Dr. Scott's opinion, but also two state agency record reviewers and a consultative examiner. As noted above, Plaintiff continued to see Dr. Scott post-surgery. During his visit on October 15, 2001, Plaintiff complained of persistent back pain and new left leg pain, and Dr. Scott recommended a follow-up MRI. (Tr. 165). The MRI revealed "some enhancing epidural fibrosis, but no recurrent disc herniation ... no compression of the left-sided nerve roots .. [normal] alignment of the spine ... [and] bone marrow signal changes opposite the L5/S1 disc consistent with active inflammation." (Tr. 164). On November 26, 2001, Dr. Scott noted no change in Plaintiff's physical condition or focal neurological deficit, and diagnosed Plaintiff with "mechanical low back pain syndrome consistent with degenerative disc disease particularly at the L5/S1 level." (Tr. 164). Less than one month later, on December 7, Dr. Scott indicated that Plaintiff could

---

[5]Plaintiff had filed a workers' compensation claim.

return to light level work on January 18, 2002, and regular work on February 18, 2002.  (Tr. 315).

Two state agency physicians reviewed Plaintiff's records, including those from Dr. Scott, and determined that he is able to perform the exertional requirements of light work. (Tr. 175-85, 201-09).  In particular, they opined that Plaintiff can lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk and sit for 6 hours in an 8-hour workday; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds; and his ability to balance is unlimited.  (*Id.*).  Dr. Mark Burns also performed a consultative examination on February 22, 2003, and opined that Plaintiff "has the ability to perform activities involving sitting, standing, moving about, lifting, carrying and handling objects, hearing, seeing, speaking and traveling."  (Tr. 215).  The physical RFC form completed by Dr. Burns did not indicate any restrictions.  (Tr. 217-19).

At Step 4, the ALJ adopted the exertional limitations imposed by the state agency record reviewers, and concluded that Plaintiff retains the RFC to perform light work activity. In doing so, he rejected the functional assessment prepared by Ms. Stephens.  (Tr. 18). In support, the ALJ noted that: 1) Ms. Stephens' opinion was "not consistent with the credible medical evidence of record;" and 2) she reported that Plaintiff appeared to be deconditioned, which was a possible explanation for his higher than average heart rate during the evaluation.[6]  The Court concludes that, even though the ALJ was not required to provide adequate reasons for rejecting Ms. Stephens' functional evaluation (because she

---

[6]The Court notes that the ALJ erroneously stated that the validity determination made by Ms. Stephens was "unknown."  (Tr. 18).  However, her functional assessment overview indicates a validity determination of "valid."  (Tr. 333).

7

does not qualify as a "treating physician"), he did so. And, in the absence of any conflict, ambiguity, or void in Ms. Stephens' report, or indication that her opinion was not based on medically acceptable clinical and laboratory diagnostic techniques, the ALJ was not required to recontact her to obtain additional information under 20 C.F.R. § 404.1512(e)(1).

As a final matter, the Court also determines that the evidence provided by Plaintiff's treating neurosurgeon, Dr. Scott - particularly, his opinion that Plaintiff could return to light, and eventually regular, work - was more than adequate for the ALJ to make a disability determination. 20 C.F.R. § 404.1512(e). Thus, Plaintiff's sole error on appeal is deemed without merit.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #4) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #5) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 27th day of September, 2005.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-388-WrightMOO.wpd